Argued and submitted October 29, 1993, affirmed December 14, 1994

In the Matter of the Compensation of
Brian M. Lundquist, Claimant.

Brian M. LUNDQUIST,
*Petitioner,*

*v.*

TRI-COUNTY METROPOLITAN TRANSIT
DISTRICT OF OREGON (TRI-MET),
*Respondent.*

(91-14573; CA A79121)

886 P2d 1045

Dennis O'Malley argued the cause and filed the brief for petitioner.

Kenneth L. Kleinsmith argued the cause for respondent. With him on the brief was Meyers & Radler.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Claimant petitions for review of an order of the Workers' Compensation Board that upheld employer's denial of his claim for treatment of his right carpal tunnel syndrome (CTS). We affirm.

Claimant is a 34-year-old bus driver, who has worked for employer as a relief driver since 1986. As part of his work, he punches transfer tickets with a hand grip punch, and, for most of his years of service, he had to change route signs by turning a manual crank that rolls up a continuous sheet of mylar containing up to 82 different route designations.

On January 14, 1988, while claimant was being treated for an upper respiratory infection, he mentioned to his physician that he had experienced numbness and tingling in his hands while at work. The doctor noted that the symptoms indicated "possible carpal tunnel syndrome" and gave him a wrist wrap. The doctor told him to come back for tests if his hands did not improve within the week, but he did not charge claimant for the advice or for the wrist wrap. Claimant did not miss any work.

After a few months of wearing the brace, the CTS symptoms cleared up. However, claimant filled out a notice of injury form. In processing the form, employer sent claimant a letter notifying him that it had not received a report of any medical treatment. On March 21, 1988, employer sent claimant another letter, which said, in part:

> "The information we have received indicates your industrial incident of January 21, 1988[,] did not necessitate medical treatment, nor was there any disability associated with this incident. Accordingly, this is not a compensable workers' compensation injury."

Claimant agreed that there was no basis for compensation, so he did not request a hearing.

In 1989, employer changed the driver's seats in its buses. Although the old seats were air-cushioned, the new seats were spring-loaded and required manual adjustment based on the driver's weight. To adjust the seat, a driver must turn a knob to increase or decrease the tension on the spring mechanism. As a relief driver, claimant usually changed

buses once or twice a day, but occasionally as many as 15 times in a day, and each time he changed buses, he had to adjust the driver's seat by turning the weight knob as many as 29 full revolutions. After working with the new seats for about a year, claimant noticed that after adjusting a spring-loaded seat to his weight, his right hand would tingle for 20 to 30 minutes. In May, 1991, he sought medical treatment for the pain and numbness. Medical tests disclosed moderate right carpal tunnel syndrome and mild left carpal tunnel syndrome. The doctor concluded that "[t]he findings on the right side [were] severe enough to consider surgical intervention."

Employer referred claimant to Dr. Button, who agreed that claimant required carpal tunnel release and noted that there was "an element of significant amount of overtime which seems to contribute to his symptoms." However, Button reported that, in his view, driving a bus was not commonly associated with CTS. He wrote:

> "[Claimant] fits a fairly common physical pattern of a large framed and overweight, if not obese individual. Although there is no strong published statistical evidence to link these two, they are still commonly associated factors seen with carpal tunnel syndrome. Therefore, for these reasons I believe his condition falls within the category of being idiopathic."

On September 13, 1991, employer denied the claim. Claimant requested a hearing on the denial. The hearings officer set aside the denial.

The Board reversed. It held that claimant's claim was precluded by *res judicata* to the extent that it was based on work activity before 1988, because he had failed to seek a hearing on the 1988 denial. It therefore characterized the 1991 claim as one for "a worsening of a preexisting noncompensable condition." As a consequence of that characterization, the Board held that claimant had the burden to prove by a preponderance of the evidence that his work activities after March, 1988, were the major contributing cause of a pathological worsening of his preexisting condition. Relying on Button's report, it found that claimant's work activities were not the major contributing cause of his right CTS and that claimant's right CTS had not pathologically worsened since March, 1988.

■ For his first assignment of error, claimant contends that the Board erred in concluding that *res judicata* principles operated to prevent him from claiming that his work before 1988 contributed to the cause of his CTS condition. However, he does not point to anything in the record that suggests that he offered any evidence that the Board excluded. Instead, according to claimant, the Board's application of *res judicata* led it to assign claimant an erroneous burden of proof. He contends that we should remand his claim "for redetermination under the correct standard of proof." We disagree with claimant's understanding of the effect of the Board's ruling.

■ In any claim for workers' compensation, the burden of proof initially is on the claimant:

> "The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred." ORS 656.266.

CTS is an occupational disease under ORS 656.802(1)(c). In order to prove compensability of an occupational disease,

> "[t]he worker must prove that employment conditions were the major contributing cause of the disease or its worsening. Existence of the disease or worsening of a preexisting disease must be established by medical evidence supported by objective findings." ORS 656.802(2).

In other words, claimant must prove that his employment was the major contributing cause of his need for compensation, whether claimant's 1991 claim is regarded as a new claim for an occupational disease or as a claim for the worsening of a preexisting condition. Therefore, the Board applied the correct burden of proof, even if it articulated the wrong reason for doing so.

■ In his second assignment of error, claimant asserts that, even if the Board applied the correct standard of proof, it erroneously found that claimant failed to meet his burden to prove that his employment was the major contributing cause of his condition. The Board examined the evidence presented by the various physicians. In Button's opinion, claimant's

work did not involve the kinds of activities that cause CTS. He concluded that claimant's condition was idiopathic. The Board articulated reasons for finding that Button's reasoning and conclusions were more persuasive than the medical opinion supporting claimant's claim. In short, the Board's finding that claimant did not prove that work was the major contributing cause of his CTS is supported by substantial evidence.

Affirmed.